UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHUICHENG YAO,

                    Petitioner,

          v.

MARKWAYNE MULLIN, et al.,

                    Respondents.

CASE NO. C26-1599-BAT

**ORDER GRANTING HABEAS PETITION AND ORDERING RELEASE**

Petitioner, a detainee at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC"), seeks 28 U.S.C. § 2241 habeas relief for a violation of due process and asks the Court to order: (1) his release from immigration detention; (2) an injunction on his re-detention in the absence of notice and a hearing at which Respondents prove flight risk or danger to the community; and (3) attorney's fees and costs. Dkt. 1. The Court **GRANTS** the habeas petition as follows.

**BACKGROUND**

Petitioner is a native and citizen of the People's Republic of China ("PRC"). Dkt. 6 (Declaration of Deportation Officer Anthony Rosa) ("Rosa Decl.") ¶ 3. In December 2021, Petitioner entered the United States without inspection or admission in California and was apprehended by Customs and Border Protection officers. *Id.* ¶ 4. Petitioner was processed for

ORDER GRANTING HABEAS PETITION
AND ORDERING RELEASE - 1

expedited removal and claimed a fear of return to China. *Id.*; Dkt. 7-1. In February 2022, U.S. Citizenship and Immigration Services ("USCIS") determined that Petitioner had a credible fear of persecution. Rosa Decl. ¶ 5. On March 3, 2022, a Notice to Appear ("NTA") was issued that charged him as inadmissible under 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I). Rosa Decl. ¶ 6. Respondents state that the NTA was rejected by the immigration court as defective because it lacked a hearing date and time. Dkt. 5, at 2.[1]

On the same day, Petitioner was released from detention on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A). Dkt. 7-2. Petitioner was given interim notice authorizing parole that stated his parole authorization was "valid from one year from the date on this notice," i.e., from one year from March 3, 2022, and was set to "automatically terminate upon [his] departure or removal from the United States or at the end of the one-year period unless ICE provide[d him] with an extension at its discretion." *Id.* His parole was "conditioned on [his] compl[iance] with the terms and conditions of [his] release," including reporting for "every scheduled hearing before the immigration court and every appointment as directed by ICE" and "not violat[ing] any local, State or Federal laws or ordinances." *Id.*

By regulation, immigration officials may parole a noncitizen pursuant to 8 U.S.C. § 1182(d)(5)(A) "for 'urgent humanitarian reasons' or 'significant public benefit,' providing the [noncitizen] present[s] neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b) (quoting 8 U.S.C. § 1182(d)(5)(A)). "Release therefore reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1104 (E.D. Cal. 2025) (typographical marks omitted) (quoting

---

[1] Respondents cite Deportation Officer Rosa's declaration for this proposition, but Officer Rosa did not state that the NTA was dismissed and did not cite a reason for the dismissal. *Compare* Dkt. 5, at 2 *with* Rosa Decl. ¶ 6.

ORDER GRANTING HABEAS PETITION
AND ORDERING RELEASE - 2

*Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018)). Respondents do not dispute that Petitioner was released with no further restrictions while he pursued his asylum application, which was filed in November 2022, and that during the intervening nearly four years Petitioner lived and worked freely and married a U.S. citizen. *See* Rosa Decl. ¶ 8.

On January 7. 2026, Enforcement and Removal Operations ("ERO") officers arrested Petitioner during a regularly scheduled check-in and transferred him to NWIPC. Rosa Decl. ¶ 12; Dkt. 7-3, at 3; Dkt. 7-4. On the Form I-213, the officers stated that an arrest warrant was issued because during "routine system queries" they "discovered" that in January 2025 Petitioner had been arrested and charged for patronizing a prostitute and in May 2025 he had been arrested and charged for fourth-degree assault and exposing a minor to domestic violence. Dkt. 7-3, at 3.  On January 19, 2026, Petitioner was served with an NTA that again charged him as inadmissible under 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I). Rosa Decl. ¶ 13. On February 23, 2026, Petitioner submitted his previously filed, 2022 asylum application to the Executive Office for Immigration Review ("EOIR").  On April 17, 2026, an immigration judge ("IJ") ordered Petitioner removed to PRC and denied his applications for asylum, withholding of removal, and withholding of removal under the Convention Against Torture. Dkt. 7-6; Rosa Decl. ¶ 15. On April 30, 2026, the Department of Homeland Security ("DHS") filed a motion to reopen with EOIR regarding a potential issue of Petitioner's competency. Rosa Decl. ¶ 16. On May 8, 2026, Petitioner appealed the IJ's decision. Rosa Decl. ¶ 17. This appeal remains pending. *Id.*

The parties dispute whether Petitioner has ever missed a routine check-in. Respondents suggest that Petitioner missed an October 2, 2025 check-in but do not substantiate this claim. *See* Rosa Decl. ¶ 12. Respondents do not attach documentation of this missed appointment or an

ORDER GRANTING HABEAS PETITION
AND ORDERING RELEASE - 3

attestation regarding a specific source for this information, and the Form I-213 neither refers to Petitioner missing an October 2025 check-in nor cites it as a reason for his re-detention. In fact, the Form I-213 states simply that on January 7, 2026, Petitioner arrived at the ERO Field Office "in accordance with his reporting requirements." Dkt. 7-3, at 3. Undisputed is that Petitioner has not been convicted of any of the charges for which he was arrested.

## DISCUSSION

Respondents argue that because Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii), he could be retained without notice or a hearing either on the basis of his humanitarian parole expiring by its own terms in March 2023, or on the basis of Petitioner missing his October 2024 check-in and being twice arrested in 2025. Petitioner responds that regardless of whether he is subject to mandatory detention under § 1225(b), Respondents violated his right to due process by re-detaining him without notice and meaningful consideration of whether he posed a flight risk or a danger to the community. Petitioner is correct.

### I.    Due Process

The Due Process Clause applies regardless of whether the noncitizen's presence is lawful, unlawful, temporary, permanent and regardless of whether detention falls under § 1225 or § 1226. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority."). Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). As to Petitioner's situation in which he was initially released upon humanitarian parole and then re-detained, this Court and numerous

ORDER GRANTING HABEAS PETITION
AND ORDERING RELEASE - 4

others in this circuit have found such individuals have a protected liberty interest in remaining out of custody. *See, e.g.*, *N.I. v. Hermosillo*, 2026 WL 770038, at *2 (W.D. Wash. Mar. 18, 2026) ("Petitioner's mandatory detention under § 1225 does not eliminate his liberty interest"); *Osuna Benitez v. Hermosillo*, 2025 WL 3763932 (W.D. Wash. Dec. 30, 2025) (collecting cases); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1025, 1032-22 (N.D. Cal. 2025) (collecting cases); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) (mandatory detention under § 1225(b) despite noncitizens' due process rights and with no consideration of their deep financial, community, and familial ties in the country raises constitutional issues).

Respondents argue that Petitioner's parole expired in March 2023 and that they were therefore permitted to re-detain him under the statute and its implementing regulations by serving him with an NTA regarding his immigration violation. *See* Dkt. 5, at 4–5, 7; 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5. Petitioner's liberty interest did not, however, expire along with his parole. *Omer G. G.*, 815 F. Supp. 3d at 1109; *Ramirez Tesara*, 800 F. Supp. 3d at 1136. "Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process, such as a hearing in front of a neutral party to determine whether Petitioner's re-detainment is warranted." *Ramirez Tesara*, 800 F. Supp. 3d at 1136. Respondents attempt to distinguish Petitioner from similarly situated petitioners because "[i]n each of [the other cases], the government was terminating or revoking still-active or recently active parole." Dkt. 5, at 7. The Court finds that Respondents' argument underscores rather than diminishes the significance of Petitioner's liberty interest. For nearly three years after the expiration date of his original parole term, the government constructively extended the term of parole by permitting Petitioner to continue to live and work freely subject to regularly scheduled check-ins. "Furthermore, the applicable regulations provide that if parole

ORDER GRANTING HABEAS PETITION
AND ORDERING RELEASE - 5

expires, a noncitizen 'shall again be released on parole' if their 'exclusion, deportation, or removal order cannot be executed within a reasonable time,' [unless] in the opinion of a DHS official 'the public interest requires that the alien be continued in custody.'" *Omer G.G.*, 815 F. Supp. 3d at 1109 (case citation and internal quotation marks omitted) (quoting 8 C.F.R. § 212.5(e)(2)(i)).

The Court finds that Petitioner has a protected liberty interest in his release. The Court therefore evaluates Petitioner's due process claim under *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine what procedures are constitutionally sufficient to protect that interest. The Court assesses (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

First, as noted above, Petitioner has considerable private interest in his freedom. His interest in not being detained "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Since 2022, Petitioner has worked and lived freely in the United States, has married a U.S. citizen, and has a pending Form I-130 petition based on his marriage and a pending asylum appeal. "When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d at 1136. That liberty interest exists regardless of ICE's initial discretion to release him on parole. *Id.* (citing *Pinchi*, 792 F. Supp. 3d at 1032); *see Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where

ORDER GRANTING HABEAS PETITION
AND ORDERING RELEASE - 6

such release is conditional, have a liberty interest in their continued liberty."). The first *Mathews* factor weighs in Petitioner's favor.

Second, the Court considers the risk of erroneous deprivation of Petitioner's liberty interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards. Respondents do not dispute that the only written notice of the revocation of his parole and his re-detention came in the form of an NTA served upon him nine days after he was arrested at a regularly scheduled check-in. Dkt. 5, at 7. As discussed earlier, although the government attempts to rely upon the automatic expiration of the parole in 2023, that the government continued to permit Petitioner to live and work freely for years subject only to regularly scheduled check-ins and the same conditions as in the original remit demonstrates a constructive extension of the parole. The notice authorizing parole states that ICE was empowered to provide him with an extension at its discretion. Dkt. 7-2. Petitioner reasonably relied upon his continued liberty being contingent on satisfying the same conditions of parole from year one to year four without any indications to the contrary. To the extent the government argues that it provided sufficient notice, notice served nine days after arrest and re-detainment is insufficient. Moreover, the record does not reflect any finding by the government that (1) "the purpose for which parole was authorized" has been accomplished, or (2) "neither humanitarian reasons nor public benefit warrants" Petitioner's presence in the United States. 8 C.F.R. § 212.5(b)(2)(i). Thus, whether Petitioner's parole was revoked "automatically" or "on notice," the government failed to follow its own regulations, which it is not free to disregard. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

Respondents argue in the alternative that Petitioner's failure to attend an October 2025 check-in and his two arrests in 2025 demonstrate that that he had violated the terms of his parole.

ORDER GRANTING HABEAS PETITION
AND ORDERING RELEASE - 7

Dkt. 7-2. Respondents' argument highlights, however, the probable value of the procedural safeguards of pre-deprivation notice and a hearing before a neutral decisionmaker. Regulations provide that, to parole Petitioner in the first place, DHS necessarily found that he "present[ed] neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). Here ERO officers unilaterally overturned the DHS determination of no flight risk and no danger to the community based on the existence of arrests for which there was neither a conviction nor further inquiry. Even post-facto, Respondents have failed to demonstrate Petitioner has ever missed a scheduled check-in appointment: Respondents submitted no documentation of the missed appointment; Officer Rosa declined to specify how he knew an October 2025 appointment existed and was missed; and the Form I-213 contradicts this assertion by referring only to Petitioner arriving for his regularly scheduled January 2026 appointment and not at all to missed appointments. Dkt. 7-3, at 3; Rosa Decl. ¶ 11. In sum, the Court finds that the procedures used here—permitting ERO officers to make unilateral decisions about re-detention despite the absence of a criminal record—run a high risk of erroneous detention, and notice and a hearing before a neutral decisionmaker would have a high probability of reducing that risk. The second *Mathews* factor weighs in favor of Petitioner.

Third, Respondents' interest in continued civil detention is low. While the government has a strong interest in preventing noncitizens from remaining in the United States in violation of the law, *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022), the public interest in civil detention without notice or a hearing is not high, where Petitioner has no criminal history and has not shown any propensity to flee the life and work he has established over the past four years. Compared to Petitioner's liberty interest, Respondents' interest in re-detaining him without procedural safeguards is low. The third factor weighs in favor of Petitioner.

ORDER GRANTING HABEAS PETITION
AND ORDERING RELEASE - 8

The Court accordingly finds Petitioner has a protected liberty interest in his release from custody under the same conditions as his expired parole agreement and all the *Mathews* factors weigh in his favor. *See Tesara v. Wamsley*, 800 F. Supp. 3d at 1139. The Court accordingly finds Petitioner should be immediately released. *Id*. The Court also concludes that a post-deprivation bond hearing is an inadequate procedural safeguard because it occurs only after detention and thus fails to address an erroneous deprivation of liberty. *See, e.g., id.*; *cf. E.A. T.-B*, 795 F. Supp. 3d at 1323-24 (citing *Domingo v. Kaiser*, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Due process requires that, unless there are changed circumstances requiring mandatory detention, Petitioner must be provided with notice and a hearing before a neutral decisionmaker before he can be re-detained. *See Tesara v. Wamsley*, 800 F. Supp. 3d at 1139; *Pinchi*, 792 F. Supp. 3d. at 1038.

## II.    Remedy

The Court notes that the specific circumstances of Petitioner's re-detention drive what process is due. Thus, the Court finds that if Petitioner is re-detained, Respondents shall provide Petitioner pre-detention notice and a hearing unless detention is statutorily mandatory (which is currently not the case under the terms of his humanitarian parole). *See Chicoze-Ezechi v. Noem*, 2026 WL 265733, at *2 (W.D. Wash. Feb. 2, 2026) ("Petitioner would be subject to mandatory detention if he committed certain crimes."). The Court finds that Respondents shall bear the burden to prove by clear and convincing evidence that Petitioner is a flight risk or a danger to the community at any subsequent re-detention hearing and that no conditions other than his detention would be sufficient to prevent such harms. *See Pinchi,* 792 F. Supp. 3d at 1038

ORDER GRANTING HABEAS PETITION
AND ORDERING RELEASE - 9

(holding Petitioner may not be detained unless the government demonstrates at a bond hearing, by clear and convincing evidence, she is a flight risk or a danger to the community and that no conditions other than her detention would be sufficient to prevent such harms.).

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the petition for writ of habeas corpus, Dkt. 1, and **ORDERS**:

1. Respondents shall (a) **RELEASE** Petitioner within 24 hours of entry of this order under the conditions of his expired parole agreement, and (b) file a status report certifying he has been released within 48 hours of entry of this order.

2. Respondents shall provide Petitioner with written pre-detention notice and afford him a hearing before a neutral decisionmaker **unless** detention is statutorily mandatory, which based on the terms of his humanitarian parole is currently not the case. At any re-detention hearing, Respondents shall bear the burden to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no conditions other than his detention would be sufficient to prevent such harms.

3. Petitioner may file a motion for an award of fees and expenses under the Equal Access to Justice Act within the time required by statute.

DATED this 4th day of June, 2026.

BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER GRANTING HABEAS PETITION
AND ORDERING RELEASE - 10